# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JACKIE CUMMINGS,

        Plaintiff,                      Case Number: 09-11814

v.                                          NANCY EDMUNDS
                                             UNITED STATES DISTRICT COURT

COMMISSIONER OF SOCIAL SECURITY,

                                             VIRGINIA M. MORGAN
        Defendant.                  UNITED STATES MAGISTRATE JUDGE

_____ /

## REPORT AND RECOMMENDATION

**I. Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons state herein, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, Plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**II. Background**

      On November 28, 2005, Plaintiff filed for a period of Supplemental Security Income and Social Security Disability Benefits alleging disability since January 2, 2004**.** (Tr. 16, 57-59) Plaintiff alleges disability due to a seizure disorder and anxiety. (Tr. 69) Plaintiff was born on March 2, 1974 and is 36 years old. Plaintiff was 30 years of age at the time of the alleged onset date of disability. (Tr. 18) Plaintiff has a 12th grade education and previously worked as an automobile lubrication servicer, machinist, cashier, and stock worker. (Tr. 18)

The Social Security Administration (SSA) denied Plaintiff's claim on initial consideration and reconsideration. Plaintiff then requested a hearing before an administrative law judge (ALJ). ALJ Richard L. Sasena held a hearing on January 8, 2008. Plaintiff, represented by counsel, appeared and testified at the hearing. The ALJ also heard testimony from vocational expert Richard Szydlowski.

The ALJ issued a decision denying Plaintiff's applications on August 28, 2008. The ALJ determined Plaintiff was not under disability within the meaning of the Social Security Act from January 18, 2005 through the date of its decision. (Tr. 17). The ALJ found that Plaintiff: 1) meets the insured status requirements of the Social Security Act through September 30, 2009, 2) has not engaged in substantial gainful activity since January 18, 2005, and 3) suffers from complex partial seizure disorder, anxiety disorder, alcohol dependence, and benzodiazepine dependence. (Tr. 18) Despite these findings, the ALJ held that Plaintiff does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19) The ALJ concluded that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [plaintiff] can never climb ladders, should avoid all exposure to unprotected heights and moving machinery, and can do no driving. (Tr. 19) In addition, the plaintiff "requires simple, routine, repetitive tasks (requiring little judgment, and that can be learned in a short period). . . no production rate work. . . no interaction with the public . . . and can have only occasional interaction with coworkers [but not as a team member]." (Tr. 20)

Plaintiff then filed a timely Summons and Complaint with the United States District Court for the Eastern District of Michigan.

**III. Standard of Review**

      A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other king of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five step process is used to evaluate Social Security Disability claims. See 20 C.F.R. § 404.1520. As discussed in Foster, this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*Id.* at 354 (citations omitted).

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. §405(g), which provides, in pertinent part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under §405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary HHS, 889 F.2d 679, 681 (6th Cir.1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV. Discussion**

**A. Hypothetical Question to the Vocational Expert**

Plaintiff asserts that the ALJ "failed to ask a proper hypothetical at the time of trial." (Pl's Mot. 7). Plaintiff argues that the Vocational Expert's (VE) testimony at the hearing should not constitute substantial evidence because each element of the hypothetical did not accurately describe Mr. Cummings in all significant and relevant respects. (Id.).

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations

is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F. 3d 629 (6th Cir. 2004). The ALJ is also not required to include unsubstantiated allegations and complaints in a hypothetical. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed. Appx. 542, 548 (6th Cir. 2002).

In this case, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and residual functional capacity (RFC) to engage in substantial gainful activity. The ALJ and VE had the following discussion, in pertinent part:

> ALJ: Okay. I'm going to ask you some hypothetical questions about an individual, 18 to 44, and of his education, which is high school graduate or ore. If such an individual is limited or restricted from the use of ladders, would have to avoid any unprotected heights or moving machinery, and would not be able to drive, and also limited to simple, routine, repetitive tasks with no interaction with the public and only occasional interaction with co-workers, could be in proximity but not as a team member. With those limitations, could any of the past relevant be done?
>
> VE: Let me think. Is this the unskilled, correct, Judge?
>
> ALJ: Unskilled, yes.
>
> VE: I think the stock worker job would fit the hypothetical. I'm not sure, thought, if the job was performed during the day shift or the night shift. But even during the day, stock workers generally do not deal with the public directly. They may be, the public may be

present on the premises where they're working, so if there's no interaction, you know, I, I think the stock worker job would fit the hypothetical.

ALJ: Ok

VE: The other jobs would be ruled out.

ALJ: Okay. And then if there was just absolutely no contact, no work in proximity with the general public, then that would eliminate the stock worker?

VE: Not all the, well, I'm sure how he performed it. Like I said, I'm not sure which shift he performed, because there are stock worker jobs where, where more people work in the night shift, for example, where they move materials and products or unload trucks in the, you know, in the evenings.

ALJ: Okay. And are there other jobs with those limitations that exist in the regional economy.

VE: Yes, there are. We have jobs across all exertion levels, your Honor. To begin with medium exertion, we have assembler jobs of various sort. I'll estimate at least 6,000 with the limitations identified. We have work as janitor/cleaners. I would estimate at least 5,000. And we have packers and packagers of various sort, at least 5,000. And there are, as well, kitchen helper-type jobs. I would estimate at least 5,000 of those as well. And we have, also, jobs at the light as well as sedentary levels. Would you like me to give examples of those?

VE: Okay. For light, for light we have night watchperson, such as a night security guard-type job. I would estimate at least 2,000, only during the night shift. An we have work again in the food preparation, kitchen and food prep-type jobs, 3,000. We have light cleaner, as in office cleaner-type jobs, 3,200. Quite a variety of assembler jobs 17,000. We have inspector/checker jobs. 2,200.

ALJ: Right. IF there are additional limitation, well, actually let me see if these, the ones you've cited, would they be considered low stress?

VE: Like I said, it all depends on how you define low stress, Your Honor. There's production stress, there's –

ALJ: All right. Well let's say no production rate work.

VE: Production rate work? okay. I believe many of the jobs would be eliminated with that factor in mind. Such as the assembler jobs, packaging jobs, would be eliminated. However, the janitor/cleaner jobs would remain because those are generally self-paced-type jobs. And I think some of the kitchen worker jobs would also remain as well. At

6

the light level, we would have, security jobs would still remain. The janitor, office cleaner jobs would remain. Assembler jobs, packaging jobs would be eliminated.

Plaintiff asserts that the ALJ did not accurately describe Mr. Cummings in all significant, relevant aspects in the hypothetical. However, Plaintiff failed to provide evidence to support his argument. The court assumes Plaintiff's assertion is dependent on her argument that the ALJ erred in evaluating the opinion of a treating physician and the GAF scores.

**B. Treating Physician's Opinion**

Plaintiff argues that the ALJ erred in failing to accord controlling weight to the opinion of of one of his treating physicians, Dr, Lockard. Plaintiff thus invokes the "treating physician" rule. The "treating physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight. When we do not give it controlling weight, we apply the factors in paragraphs (d)(2)(I) and (d)(2)(ii) of this sections, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). As the Sixth Circuit stated in <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 519-30 (6th Cir. 1997): "[i]n general, the opinions of treating physians are accorded greater weight than those physicians who examine claimants only once." Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence" in the record. However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or

7

is consistent with other substantial evidence in the record. See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physician's opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

Plaintiff asserts that Dr. Lockard's findings regarding the severity of Mr. Cummings' impairment was not given appropriate weight by the ALJ. In 2006, Dr. Lockard reported that claimant is disabled, cannot stand, drive, or walk, can sit for 8 hours per day with breaks, and limited to sedentary activity. (Tr. 202-203) In the "Physical Medical Source Statement," date January 3, 2008, Dr. Lockard opined that Plaintiff's physical limitations would disrupt a regular job schedule with low physical demands 100 percent of the time. (Tr. 477F) In the "Mental Physical Medical Source Statement," dated January 3, 2008, Dr. Lockard identified Plaintiff's ability to: 1) relate and interact with supervisors and co-workers, 2) understand, remember and carry out an extensive variety of technical and/or complex job instructions, 3) understand, remember and carry out simple one-or-two step job instructions, and 4) handle funds, as mildly limited. (Tr. 477G) Plaintiff's ability to deal with the public and maintain concentration, as well as attention for at least two hour increments was identified as markedly limited. (Tr. 477G) Dr. Lockard also found Plaintiff's ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity as extremely limited. (Tr. 477G)

After assessing Dr. Lockard's conclusions, the ALJ decided not to give the treating physician's evaluations significant weight "because the limitations identified are out of proportion with the remaining objective medical evidence contained in the record and there is nothing in the treatment notes that would support such limitations," and the Court agrees. (Tr. 23) First, as found by the ALJ, Dr. Lockard's conclusions and Mr. Cumming's allegations are inconsistent with the

objective medical findings in the record and fail to provide substantial evidence to conclude otherwise. Furthermore, "nothing in the medical evidence suggests that the effect of [Mr.Cummings'] seizures was more than transient" and do not explain the mental medical limitations asserted by Dr. Lockard. (Def.'s Mot. 14, 15) After considering the evaluations of other treating physicians such as Dr. Joanna Kala, Dr. Edward Czarnecki, and Dr. Phillipa Zylanoff, as well as the opinion of a psychologist, Sally Glowicki, it was reasonable for the ALJ to conclude that Plaintiff's limitations, both physical and mental, did not meet the definition of disability defined in the Social Security Act. As the ALJ noted, Dr. Kala's "Physical Medical Source Statement," opined that Mr. Cummings' limitations would likely disrupt a regular job schedule with low *physical* demands approximately two-thirds of the time. (Tr. 588) (emphasis added). In addition, Dr. Kala's "Mental Medical Source Statement" concluded that Mr. Cummings' mental work-related limitations were mostly insignificant or mild. (Tr. 587) Moreover, Dr. Czarnecki concluded that Mr. Cummings "retains the mental capacity to sustain an independent routine of simple work activity. He can tolerate low stress social demands and adapt to simple changes in routine." (Tr. 465) The Court finds the ALJ's treatment of Dr. Lockard's opinion to be valid, because it was neither consistent with other substantial evidence in the record nor supported by sufficient clinical findings.

**C. The ALJ's Treatment of the GAF Scores**

Plaintiff asserts that the ALJ erred in failing to give substantial weight to two Global Assessment of Functioning (GAF) scores, 41 and 50, assigned in to Mr. Cummings in 2005 and 2008, respectively. However, as the Commissioner noted in its motion, "[a] GAF score may help an ALJ assess mental RFC, but it is not itself a residual functional capacity." See Kennedy v. Astrue, 2007 WL 2669153 at *5 (6th Cir. Sept. 7, 2007) (quotations omitted). Furthermore, an ALJ is not

required by statute, regulation or authority to place substantial weight in a GAF score. See Kornecky v. Comm'r of Soc. Sec., 2006 WL 305648 (6th Cir. Feb. 9, 2006).

In this case, it is clear from the record that the ALJ considered all the GAF scores assigned to Mr. Cummings between 2005 and 2008. After evaluating each GAF score, the ALJ concluded that only one of the GAF scores, 57, was "consistent with the treatment record in this case, and thus assigned more weight" by the ALJ. (Tr. 22) The Court does not object to the ALJ's conclusions and agrees that the report by Terry Rudolph, a State agency psychologist, is more consistent with the treatment record. (Tr. 462)

After carefully evaluating the record, the Court finds that the ALJ's hypothetical question to the VE and assessment of Mr. Cummings' limitations to be supported by substantial evidence.

## V. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arb*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1981). The filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                              S/Virginia M. Morgan
                                              Virginia M. Morgan
                                              United States Magistrate Judge

Dated: April 15, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 15, 2010.

                                              s/Jane Johnson
                                              Case Manager to
                                              Magistrate Judge Virginia M. Morgan